# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NRES-NV1, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOSEPH W. SNYDER et al., | ) |
| | ) |
| Defendants. | ) |

3:15-cv-00133-RCJ-VPC

**ORDER**

This case arises out of a homeowners' association foreclosure sale.  Pending before the Court is a Motion for Summary Judgment (ECF No. 29).  For the reasons given herein, the Court grants the motion.

## I.      FACTS AND PROCEDURAL HISTORY

On February 21, 2001, a Declaration of Covenants, Conditions, and Restrictions (the "CC&R") was recorded as to real property at 20982 Little Valley Court, Reno, Nevada (the "Property"). (Compl. ¶ 9, ECF No. 1-1).  On July 21, 2005, Defendants Joseph and Dana Snyder gave Summit Funding, Inc. ("Summit") a promissory note for $304,000 (the "Note") to purchase or refinance the Property, secured by a first deed of trust (the "DOT") against the Property in favor of Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.* ¶¶ 3, 5;

1   DOT, 29-1).[1]   On May 4, 2006, the Snyders gave Defendant National City Bank ("NCB") a

2   second deed of trust against the Property to secure a $35,000 revolving line of credit, which was

3   later assigned to MERS as nominee for Defendant RBS Citizens, N.A. ("RBS"). (Compl. ¶¶ 7–

4   8).   On May 3, 2012, MERS assigned the Note and DOT to Defendant Bank of New York

5   Mellon ("BONYM") as trustee for a mortgage-backed security. (Compl. ¶ 6; Assignment, ECF

6   No. 29-4).   The Snyders defaulted under the CC&R, including as to amounts putting the lien in

7   partial priority to the DOT under Nevada Revised Statutes section 116.3116, and non-party

8   White Lake Ranch Association (the "HOA") caused to be recorded a notice of delinquent

9   assessment lien, a notice of default and election to sell, and two notices of homeowners

10   association sale. (*Id.* ¶¶ 10–13, 15).   Plaintiff NRES-NV1, LLC ("NRES") was the successful

11   bidder at the October 10, 2012 sale. (*Id.* ¶ 14).

12          Plaintiff sued the Snyders, MERS, Summit, BONYM, NCB, and RBS in state court to

13   quiet title to the Property.   BONYM and MERS removed.   The other Defendants have not

14   appeared.   Summit filed a disclaimer of interest in state court.   BONYM and MERS have

15   answered without pleading any counterclaims, and they have now moved for summary judgment.

16   **II.   LEGAL STANDARDS**

17          A court must grant summary judgment when "the movant shows that there is no genuine

18   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

19   Civ. P. 56(a).   Material facts are those which may affect the outcome of the case. *See Anderson*

20   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute as to a material fact is genuine if

21   there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

22

23   1 As permitted under Nevada law, *see Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 259–60
     (Nev. 2012), the DOT made MERS the beneficiary of the DOT as well as the nominee of the

24   lender with respect to the Note such that it could transfer both, (*see* DOT 1–3).

*id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the

assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.   ANALYSIS

Defendants argue: (1) BONYM's predecessor-in-interest tendered the superpriority amount of the HOA's lien before the sale; (2) the sale was unconstitutional for lack of notice; and (3) the sale was commercially unreasonable.

### A.   Tender of the Superpriority Amount Before Sale

The Nevada Supreme Court recently ruled that an association's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1110–13 (Nev. 2016).  The Court remanded for further fact-finding in that case but noted that the general rule

for gross inadequacy was 20% of fair market value, that the Court had in the past approved sales for as low as 28.5%, and that the apparent 23% ratio in the case before it was not "obviously" inadequate. *See id.* at *6 (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).  The Court noted that a foreclosing entity's behavior with respect to a first mortgagee's attempts to redeem the superpriority portion of an association lien before sale is relevant to fraud, unfairness, or oppression. *See id.* at 1113.

### 1.    Gross Inadequacy of Sale Price

Defendants have satisfied their initial burden as to gross inadequacy by providing evidence that the sale price was less than 2% the secured amount. (*See* DOT (securing $304,000); Deed in Foreclosure of Assessment Lien, ECF No. 29-8 (indicating a sale for $5,726)).  Even assuming the fair market value was only half the secured amount—a fair assessment for Nevada real property purchased in 2005 and sold in 2012—the sale price was less than 4% of the fair market value, which is five times less than the amount generally required to avoid a finding of gross inadequacy.  Plaintiff has not provided any contrary evidence of the fair market value or the sales price, and the Court therefore grants summary judgment to Defendants on the issue of gross inadequacy of sale price.

### 2.    Fraud, Unfairness, or Oppression

The issue in this case is not fraud, but unfairness and oppression.  The Court rules that proof of tender of the superpriority portion of a lien followed by a denial of the continuing validity of the first mortgage constitutes unfairness and oppression under Nevada law, especially where an HOA or its agent attempts to extract thousands of dollars in subpriority amounts from a lienor whose interest is subordinate only to hundreds of dollars in superpriority amounts, under

threat of a clouded several-hundred-thousand-dollar deed of trust after sale.  Defendant has

adduced evidence of the tender of nine months' worth of delinquent assessments ($225) before

the HOA sale. (*See* Letter & Cashier's Check, ECF No. 29-5).  In response, Plaintiff admits this

amount was tendered but argues that certain additional collection costs were part of the

superpriority portion of the lien.  The Nevada Supreme Court has since ruled to the contrary,

however. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Adv. Op. 35, at

13 (Nev. 2016) ("Taking into consideration the legislative intent, the statute's text, and statutory

construction principles, we conclude the superpriority lien granted by NRS 116.3116(2) does not

include an amount for collection fees and foreclosure costs incurred; rather it is limited to an

amount equal to the common expense assessments due during the nine months before

foreclosure.").

       In summary, Defendant is entitled to summary judgment under the *Shadow Wood* test

because there is no genuine issue of material fact that the sale price was grossly inadequate and

that the rejection of the tender of the superpriority portion of the HOA lien prior to the sale was

unfair and oppressive.

       **B.**    **Due Process**

       Because Plaintiff asks the Court to declare of the validity of the sale, the Due Process

Clause of the Fifth Amendment is implicated under the rule of *Shelley v. Kraemer*, 334 U.S. 1

(1948) if a lack of notice of the sale would have been constitutionally problematic had a state

entity conducted the sale. *See U.S. Bank N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063,

1076–81 (D. Nev. 2015) (Jones, J.).  Defendants have satisfied their initial burden to point out

that there is no evidence of constitutionally sufficient notice of the sale having been given to the

beneficiary of the DOT at the time of the sale.  It does not appear disputed—Plaintiff itself

alleges—that BONYM was the recorded beneficiary of the DOT by May 2012, that the second

notice of sale (the one that led to the actual sale) was recorded in September 2012, and that the

sale occurred in accordance therewith in October 2012. (*See* Compl. ¶¶ 6, 13–14).  Plaintiff has

adduced no evidence tending to indicate that BONYM was given notice of the sale.  Plaintiff has

adduced only the DOT, the various notices (but no evidence of their mailing or other

transmission), the deed in foreclosure and a correction thereto, and an advisory opinion of the

Nevada Real Estate Division of the Department of Business and Industry as to the limitations of

superpriority liens.  Plaintiff notes that there was no state action in the foreclosure sale itself.  As

the Court has noted, however, although that prevents any direct Fourteenth Amendment

counterclaim by Defendants, under *Shelley* the Fifth Amendment is a valid defense to quiet

title/declaratory judgment claims by Plaintiff in federal court. *See U.S. Bank N.A.*, 124 F. Supp.

3d at 1076–81.  The Court therefore grants summary judgment to Defendants under the Due

Process Clause of the Fifth Amendment.  The Court cannot put the government's imprimatur on

the foreclosure in this case via a civil judgment declaring it to have been valid.

## C.    Commercial Unreasonableness of the Sale

> In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral.  Every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable.  Although the price obtained at the sale is not the sole determinative factor, nevertheless, it is one of the relevant factors in determining whether the sale was commercially reasonable.  A wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale.

*Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 919–20 (Nev. 1977) (citations omitted).

Although related, this equitable rule is different from the equitable rule of *Shadow Wood*.  The

*Levers* rule is concerned with the circumstances of the sale generally, as opposed to the treatment

of junior lienors in particular.  Under *Shadow Wood*, gross inadequacy in price and "fraud,

unfairness, or oppression" to the junior lienor are two prongs of a conjunctive test.  By contrast, under *Levers* a discrepancy between the sale price and the value of the collateral is only one factor in a totality-of-the-circumstances-type test, although a "wide" discrepancy triggers closer scrutiny of the reasonableness of other aspects of the sale.

As noted, there was a "wide discrepancy between the sale price and the value of the collateral" in this case.  A factfinder would therefore have to closely scrutinize all aspects of the sale, such as method, manner, time, and place.  Although the Court grants summary judgment on other issues, it reserves judgment on the commercial reasonableness issue.  Defendant has not provided evidence of irregularities in the sale process apart from the gross inadequacy of the sale price.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 29) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 41) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

DATED: This 6th day of May, 2016.

_____
ROBERT C. JONES
United States District Judge